**In re Vivian E. CROOK, Debtor.**

**CREDIT ALLIANCE CORP., Appellant,**

v.

**Lewis W. BOIES, Jr., Appellee.**

**BAP No. OR 86–1663 JAsV.**

**Bankruptcy No. 384–02980 H (11).**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted on Feb. 20, 1987.

Decided Oct. 14, 1987.

Howard M. Levine, Sussman, Shank, Wapnick, Caplan & Stiles, Portland, Or., for appellant.

Lewis W. Boies, Jr., Boies & O'Rourke, Los Angeles, Cal., for appellee.

Before JONES, ASHLAND and VOLINN, Bankruptcy Judges.

## OPINION

ROBERT CLIVE JONES, Bankruptcy Judge:

Appellant Credit Alliance Corporation appeals the bankruptcy court's order retroactively authorizing the employment of special counsel for the debtor. Because we conclude that the requirements for issuing the retroactive order were not satisfied, we reverse.

## FACTS

The debtor, Vivian Crook, filed a Chapter 11 petition in the Bankruptcy Court for the District of Oregon in September, 1984. She operated as a debtor-in-possesion until August 24, 1985 when a trustee was appointed.

The applicant, Lewis Boies, a California attorney, had represented Crook prepetition in litigation unrelated to the bankruptcy. In November, 1984 Boies was employed by Crook to represent her in bankruptcy litigation involving Appellee Credit Alliance Corporation ("Credit Alliance"). When the trustee was appointed, Boies represented the trustee in the Credit Alliance litigation. Boies claims he was informed by Crook's bankruptcy counsel that his employment would be or had been authorized and that funds were available to pay him.

Boies asserts that in December 1984, January 1985, February 1985 and September 1985, he appeared in the trial court and was admitted to practice pro hac vice. Although Boies claims a written motion to authorize his employment was submitted to the court in December 1984, the record contains no copy of such a motion. Boies further asserts the written motion was orally granted at the December hearing, but the record contains no written order to that effect and the transcripts do not so indicate.

On February 18, 1985 Boies received a $5,000.00 payment from the estate. In May 1985, Boies received a $1,620.31 payment from the estate. It appears that neither payment was authorized by the court.

At a hearing on May 13, 1985 Boies was informed by counsel for Credit Alliance that his employment had not been authorized. Nevertheless, Boies continued representing the estate in the Credit Alliance proceedings without seeking formal authorization for his representation of the estate. On February 24, 1986, Boies filed an Application for Order Approving Employment of Attorneys and for Payment of Fees, Costs and Expenses (the "Application"). Accompanying the Application was a letter to Judge Hess discussing the Application.

The Application, but not the letter, was sent to Credit Alliance and other interested parties. Credit Alliance opposed the Application and a hearing was held on April 1, 1986. The court ordered Boies to file within 30 days a memorandum outlining evidence that he had satisfied the tests of *In re Kroeger Properties*, 57 B.R. 821 (9th Cir. BAP 1986), and *In re Willamette Timber Systems, Inc.*, 54 B.R. 485 (Bankr.D. Or.1985). Boies failed to file the memorandum and Credit Alliance moved to have the Application denied. Nevertheless, the court scheduled a telephonic evidentiary hearing for June 2, 1986. After that hearing, the court issued a memorandum opinion, *In re Crook*, 62 B.R. 937 (Bankr.D.Or. 1986), and an Order Approving Employment of Attorneys for Special Purpose, retroactive to December 27, 1984. Credit Alliance timely appealed.

## DISCUSSION

This appeal presents two questions: whether the bankruptcy court had authority to issue a retroactive order of employment and whether the bankruptcy court erred issuing such an order in this case.

### I.

■ The first issue is easily resolved. In bankruptcy, the general rule is that "a professional cannot recover fees for services rendered the estate if he has not been authorized to so serve by court order." *Willamette Timber*, 54 B.R. at 487–88. In the Ninth Circuit, however, bankruptcy courts have the power to issue nunc pro tunc (i.e., retroactive) orders authorizing employment in limited circumstances. *See In re Laurent Watch Co.*, 539 F.2d 1231 (9th Cir.1976); *Kroeger Properties*, 57 B.R.

at 822.[1] Therefore, the trial court had jurisdiction to issue the retroactive order of employment.

### II.

■ Having determined that a bankruptcy court may issue a retroactive order authorizing employment, we next consider whether the trial court erred in issuing the instant order. We review such a decision for an abuse of discretion. *See Kroeger Properties*, 57 B.R. at 823; *Willamette Timber*, 54 B.R. at 488.

■ At the outset, we note that such orders should not be routinely issued. In *Kroeger Properties* we stated that there is no right to receive a retroactive order and that limiting them "to extraordinary circumstances will deter attorneys from general non-observance of [Bankruptcy Code] Section 327." 57 B.R. at 822–23 (footnote omitted).[2] We concluded that in reviewing an application for a retroactive employment order, the trial court may consider the factors found in *In re Twinton Properties Partnership*, 27 B.R. 817, 819–20 (Bankr. M.D.Tenn.1983). 57 B.R. at 823.[3] In *In re Crest Mirror & Door*, 57 B.R. 830 (9th Cir. BAP 1986), we further noted:

> The rule which must be applied … is one in which the Court *balances the equities* and exercises its discretion. It must weigh the good faith of the professional in proceeding without an order and take into account the response to information that the order has not been entered. It must further determine the emergent need for the services rendered … whether or not the debtors could have functioned without such services. Other factors for consideration include a

---

**1.** We agree with the court below, *see* 62 B.R. at 940 n. 1, that the term "nunc pro tunc" is technically incorrect in this context. "An order nunc pro tunc cannot do more than supply a record of something that was actually done at the time to which it is retroactive." *Kroeger Properties*, 57 B.R. at 824 (Elliott, J. concurring). Accordingly, we avoid using it and instead use the more accurate term "retroactive" order authorizing employment.

**2.** Section 327, 11 U.S.C. section 327, in conjunction with Bankruptcy Rule 2014, requires attor-

neys to seek court approval prior to commencing employment.

**3.** The court below stated that it was not bound by *Kroeger Properties* because that case was decided by the Bankruptcy Appellate Panel and did not emanate from the District of Oregon. This view, however, has been rejected by *In re Windmill Farms, Inc.*, 70 B.R. 618 (9th Cir. BAP 1987), where we held that Bankruptcy Appellate Panel decisions are binding on all bankruptcy courts in the Ninth Circuit from which review to the Panel has been authorized. *Id.* at 622.

determination of whose responsibility it was to obtain authorization, the applicant's relationship with the debtors and his own sophistication in the field. *Id.* at 832–33 (quoting *In re Freehold Music Center, Inc.*, 49 B.R. 293 (Bankr.D.N.J. 1985)). In light of these cases, it is clear that the elements listed in *Twinton Properties* are factors which may be used by the trial court to guide its decision. Although they are not a litmus test for issuance of a retroactive order of employment, when we apply these principles to this case, we must reverse.

The trial court concluded that Credit Alliance had raised reasonable objections to the retroactive order, but that the mere *existence* of reasonable objections was insufficient to deny the application. If a party raises a reasonable objection to the retroactive order, the burden is on the applicant to respond to the objection and to show that it does not warrant denying the application. Credit Alliance appears to object to the retroactive order on the grounds that Boies was simply negligent in not obtaining an order authorizing his employment, and that Boies' work was not performed properly. We agree with the trial court that even if these objections might not ultimately justify denial of the order, they are reasonable. Accordingly, Boies had a duty to at least respond to them.

The trial court stated that Credit Alliance had failed to show that Boies was not qualified for employment and that, accordingly, Boies was qualified for employment under the Bankruptcy Code and Rules. *Id.* at 941. We are concerned with this allocation of the burden of proof. The burden was not on Credit Alliance to demonstrate that Boies was *not* qualified for employment, but on Boies to show that he *was* qualified. *See Kroeger*, 57 B.R. at 823; *Twinton Properties*, 27 B.R. at 819. This burden normally is not a heavy one; it may be met by way of affidavit or documentary evidence. Nevertheless, the burden is on the applicant, not on the objector. We note, however, that because nothing in the record indicates that Boies would not have been qualified to serve as counsel for

the debtor or the trustee, this element probably would not have justified denying the retroactive order.

Primarily, we are concerned with Boies' sixteen month delay in seeking approval of his employment. Both the Bankruptcy Appellate Panel, *Kroeger Properties*, 57 B.R. at 823, and the Bankruptcy Court for the District of Oregon, *Willamette Timber*, 54 B.R. at 489, have held that attorneys practicing in bankruptcy court are charged with knowledge of the Bankruptcy Code and Rules. Thus, Boies was charged with knowledge of the requirement that he obtain approval of his employment from the court. The court below was satisfied, in light of the fact Boies resides in California, with his explanation that he had been told by Crook's general bankruptcy counsel that his employment had been authorized. The record indicates, however, that Boies was informed in May, 1985 that no order authorizing his employment had been entered. After that time Boies could have checked the files when he was in Portland for court appearances or had someone else check them for him. Alternatively, Boies himself could have sought an employment order immediately. Instead he waited nine more months to file the instant application. Although Boies' reliance on the statements of the general bankruptcy counsel may have been reasonable before May, 1985, it was not reasonable after that time. Moreover, we decline to adopt the position that merely residing in a different state, even a distant one, justifies failing to obtain pre-employment court authorization. The Bankruptcy Code and Rules are effective and presumably known by members of the bar in every district and state in the nation.

Boies' conduct may be summarized as follows: He never familiarized himself with the Bankruptcy Code or Rules regarding authorization of his employment. Even after being informed in May, 1985 that his employment had not been authorized, Boies waited nine months to file an application for employment. Only after his work on the case was complete and he had received over $6,000 in unauthorized payments did

Boies seek retroactive authorization for his employment. Boies did not file points and authorities or other documents in support of his application, nor did he respond to the reasonable objections raised by Credit Alliance. Even after being ordered to submit a memorandum demonstrating that he had satisfied the requirements for a retroactive order, Boies failed to act; he submitted nothing prior to the final hearing on his application.

Nothing in the record explains this conduct which appears to demonstrate, at best, negligence and, at worst, complete disregard for the Bankruptcy Code's requirement of obtaining court approval prior to commencing work as a professional for the debtor. Where the lateness in seeking court approval of employment is attended by inexcusable or unexplained negligence, a retroactive authorization order should not be issued. *See Kroeger Properties,* 57 B.R. at 823; *see also Willamette Timber,* 54 B.R. at 495 (retroactive order denied because applicant did not explain failure to seek pre-employment approval). Therefore, viewing the record before us in a light most favorable to Boies, we conclude that his conduct prohibits issuance of a retroactive order of employment.

Accordingly, we REVERSE.